# United States District Court

_____ CENTRAL DISTRICT OF ILLINOIS _____

UNITED STATES OF AMERICA

v.

DWAYNE JETT and
JERMAREL JACKSON

**CRIMINAL COMPLAINT**

CASE NUMBER 06- 3037-m

FILED
JUL 1 9 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

From on or about July 2005 to on or about April 28, 2006, in the Central District of Illinois, and elsewhere, DWAYNE JETT and JERMAREL JACKSON, defendants herein, knowingly and intentionally conspired with each other and with other persons, known and unknown, to distribute a controlled substance, namely, 50 grams or more of a mixture or substance containing cocaine base (crack), a Schedule II controlled substance, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A)(iii) and 846.

I further state that I am a __DEA Special Agent__ and that this complaint is based on the
                                  Official Title
following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof:   ☒ Yes    ☐ No

s/ Christian A. McGuire
Signature of Complainant

Sworn to before me and subscribed in my presence,

July 19, 2006 at : 11:30 a.m.            at     Springfield, Illinois
Date                                            City and State

Byron Cudmore
U.S. Magistrate Judge                   s/ Byron G. Cudmore
Name & Title of Judicial Officer        Signature of Judicial Officer

STATE OF ILLINOIS      )
                       ) ss
COUNTY OF SANGAMON )

## AFFIDAVIT

I, Christian A. McGuire, being first duly sworn, hereby depose and state:

I am a Special Agent of the Drug Enforcement Administration (DEA), and have been so employed since January 1997. I am presently assigned to the Springfield, Illinois, Resident Office. I have personally conducted and/or assisted in hundreds of investigations of individuals and organizations deriving income from the unlawful distribution of controlled substances. I have had hundreds of conversations with drug traffickers concerning their methods of operation in the course of investigative interviews and covert activities. I have also participated in the execution of hundreds of search warrants relating to illegal drug trafficking and manufacturing. In addition, I have participated in numerous federal investigations involving the court authorized interception of wire communications which resulted in the arrest and conviction of narcotics dealers, in the course of which I have listened to thousands of covertly recorded conversations between dealers revealing their methods of operation.

1.      This affidavit is submitted in support of a complaint charging Dwayne D. Jett (Jett) and Jermarel E. Jackson (Jackson) with conspiracy to distribute at least fifty grams of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(iii), and 846.

2.      I am familiar with the following facts based upon my own personal observation and upon information officially supplied to me by other law enforcement agents.

3.     Illinois State Police Confidential Source (CS) Travis Wright (fictitious name) will be referred to as "CS #1". Illinois State Police Confidential Source (CS) Tim York (fictitious name) will be referred to as "CS #2". CS #1 is a paid CS who has conducted several controlled purchases at the direction of the Illinois State Police. CS #2 is cooperating with authorities in exchange for consideration on a potential pending drug case. During the controlled purchases CS #1 accomplished his/her directions with no problems. Additionally, CS #1 and CS #2 have provided intelligence on drug trafficking activities throughout the Quincy, Illinois, area and in many cases this information has been corroborated by information already obtained from other sources. To my knowledge, CS #1 and CS #2 have never provided any inaccurate or false information in the course of his/her cooperation. CS #1 and CS #2 are, therefore, believed to be reliable confidential sources.

**RELEVANT EVENTS ON SEPTEMBER 30, 2005**

4.     On 09/30/05 CS #1 used a cellular telephone to call Jett and order one-16th of an ounce of crack cocaine. CS #1 and his/her vehicle were then searched by Inspector Lee Mangold (Mangold) with negative results for contraband or currency. Inspector Mangold then provided CS #1 with $125.00 prerecorded Official Authorized Funds and directed CS #1 to proceed to meet with Jett. When CS #1 arrived at the residence of Jett, 1221 Vermont, Quincy, Illinois, Inspectors of the Illinois State Police had established surveillance of Jett's residence and monitored CS #1's activities. Inspectors surveilled CS #1 pull up in front of 1221 Vermont, Quincy, Illinois, and meet with Jett's 17 year old girlfriend Shantiya L. Abbey (Abbey). A short time later CS #1 and Abbey ended their meeting and CS #1 departed the area.

5. CS #1 then returned to a prearranged meet location and relinquished a baggie containing the crack cocaine to Inspector Mangold. Insp. Mangold searched CS #1's person and vehicle with negative results for contraband or currency. The crack cocaine was subsequently submitted to the Illinois state Police Forensics Laboratory for analysis and was found to consist of 2.6 grams of cocaine "crack" base.

6. Subsequent to relinquishing the crack cocaine to Inspector Mangold, CS #1 was debriefed concerning the above summarized purchase. CS #1 indicated that when he arrived at the residence of Jett, Abbey came to CS #1's vehicle to serve CS #1 the crack cocaine. CS #1 indicated that after Abbey did this he/she departed the area of Jett's house. CS #1 indicated that Jett did this because he (Jett) was wanted on a warrant for a case involving the Aggravated Discharge of a Firearm in Quincy, Illinois. CS #1 also indicated that Abbey was pregnant at the time of this delivery.

## RELEVANT EVENTS ON OCTOBER 7, 2005

7. On 10/07/05 Jett was arrested by members of the Quincy Police Department at 1221 Vermont, Quincy, Illinois, on an outstanding warrant for Aggravated Discharge of a Firearm. Subsequent to Jett's arrest, that location was searched. This search was authorized by the lessee of the rental property who indicated that Jett was not listed as a resident of this apartment. Subsequently seized from this apartment was a clear plastic baggie containing a hard off-white substance, sandwich baggies and a digital scale. Also seized from immediately outside of 1221 Vermont, Quincy, Illinois, lying on the grass near the rear door, was another clear plastic baggie containing the same type of off-white substance.

8.  Quincy Police Detective Jeff Baird (Baird) interviewed Jett subsequent to his arrest concerning the drugs found at 1221 Vermont, Quincy, Illinois. Prior to the interview commencing, Baird advised Jett of his Miranda rights and Jett indicated that he understood his rights and would speak with law enforcement officers. During this interview Jett denied the possession of the cocaine but did state that he had used the digital scales to weigh three 8-balls of cocaine which he had sold approximately one week prior to this date (10/07/05).

The two plastic baggies containing the purported crack cocaine was subsequently submitted to the Illinois state Police Forensics Laboratory for analysis and was found to consist of 2.6 grams of cocaine "crack" base and 1.3 grams cocaine "crack" base, respectively.

### INTERVIEW ON OCTOBER 11, 2005

9.  On 10/11/05 Baird again interviewed Jett concerning the drugs found at 1221 Vermont, Quincy, Illinois. Prior to the interview commencing Baird advised Jett of his Miranda rights and Jett indicated that he understood his rights and would speak with law enforcement officers. Jett admitted that all the cocaine found inside the residence and outside was Jett's. Jett indicated that one of the bags should have been an 8-ball, approximately 3.5 grams of crack cocaine, and the other bag was approximately one-sixteenth ounce which would be approximately 1.5 grams of cocaine. Jett stated that the larger bag, being the 8-ball, Jett was going to sell to make money for his attorney. The other bag, being the sixteenth of an ounce, Jett had for himself.

### RELEVANT EVENTS ON NOVEMBER 16, 2005

10. On 11/16/05 CS #1 used a cellular telephone to call Jett and order one gram of crack cocaine and a pistol. CS #1 and his/her vehicle were then searched by Inspector Mangold with negative results for contraband or currency. Inspector Mangold then provided CS #1 with $100.00 for the crack cocaine and $120.00 for the pistol (both prerecorded Official Authorized Funds) and directed CS #1 to proceed to meet with Jett. When CS #1 arrived at the residence of Jett, 805 N. 5th, Quincy, Illinois, Inspectors of the Illinois State Police had established surveillance of the apartment complex and monitored CS #1's activities. Inspectors surveilled CS #1 park adjacent to 805 N. 5th, Quincy, Illinois, and enter through the rear door of the apartment complex.

11. A short time later CS #1 and Jett exited 805 N. 5th, Quincy, Illinois, and got into CS #1's vehicle. Surveillance units then found Jett and CS #1 at 910 N. 3rd Street, Quincy, Illinois, where CS #1 remained in the vehicle while Jett went towards the residence. A short time later Jett returned to CS #1's vehicle and, after a moment, CS #1 departed the area.

12. CS #1 then returned to a prearranged meet location and relinquished a baggie containing the crack cocaine and a black holster with a .25 caliber semi automatic Beretta (Model 21a) pistol with 8 rounds of ammunition in a magazine to Inspector Mangold. Insp. Mangold again searched CS #1's person and vehicle with negative results for contraband or currency. The crack cocaine was subsequently submitted to the Illinois state Police Forensics Laboratory for analysis and was found to consist of .9 grams of cocaine "crack" base. It is noted that ½ of the serial number on the .25 caliber pistol was obliterated.

13. Subsequent to relinquishing the crack cocaine to Inspector Mangold, CS #1 was debriefed concerning the above summarized purchase. CS #1 indicated that when he arrived at the apartment complex Jett provided CS #1 the crack cocaine and asked CS #1 to drive him to another location for the gun. CS #1 indicated that CS #1 and Jett then drove to 910 N. 3rd Street, Quincy, Illinois, where CS #1 remained in the vehicle while Jett went to obtain the gun. CS #1 stated that a short time later Jett returned to CS #1's vehicle and gave CS #1 the pistol.

### RELEVANT EVENTS ON DECEMBER 5, 2005

14. On 12/05/05 CS #1 used a cellular telephone to call Jett and order 4 grams of crack cocaine. CS #1 and his/her vehicle were then searched by Inspector Lee Mangold with negative results for contraband or currency. Inspector Mangold then provided CS #1 with $470.00 prerecorded Official Authorized Funds and directed CS #1 to proceed to meet with Jett. When CS #1 arrived at the residence of Jett, 805 N. 5th, Quincy, Illinois, Inspectors of the Illinois State Police had established surveillance of Jett's residence and monitored CS #1's activities. Inspectors surveilled CS #1 park adjacent to 805 N. 5th, Quincy, Illinois, and enter through the rear door of the apartment complex.

15. Several minutes later CS #1 exited the apartment complex and returned to his/her vehicle. CS #1 then returned to a prearranged meet location and relinquished a baggie containing the crack cocaine to Inspector Mangold. Insp. Mangold searched CS #1's person and vehicle with negative results for contraband or currency. The crack cocaine was subsequently submitted to the Illinois state Police Forensics Laboratory for analysis and was found to consist of 3 grams of cocaine "crack" base.

16. Subsequent to relinquishing the crack cocaine to Inspector Mangold, CS #1 was debriefed concerning the above summarized purchase. CS #1 indicated that when he arrived at the residence of Jett, Jett was not there but another individual going by the letter "J" (subsequently identified as Jermarel Jackson) from Chicago, Illinois, was present. CS #1 indicated that Jackson attempted to sell CS #1 the cocaine but CS #1 refused to purchase the cocaine from Jackson and waited until Jett arrived to purchase the cocaine.

### INTERVIEW ON APRIL 11, 2006

17. On 04/11/06 Insp. Mangold interviewed CS #2 concerning his/her knowledge of the drug trafficking activities of Jett and Jackson. CS #2 admitted that he/she distributed crack cocaine for two individuals named Dwayne Jett a.k.a. "Taz" and Jermarel Jackson a.k.a. "Michael Anderson" in the Quincy, Illinois, area. CS #2 advised that he/she was brought to Quincy, Illinois, from Chicago, Illinois, by Jett and Jackson to sell crack cocaine for them. CS #2 indicated that he/she made approximately $4000 over the past five week period distributing this crack cocaine.

18. CS #2 stated that earlier in the month, believed to have been 4-3-06, he/she drove Jett and Jackson to Chicago, Illinois, from Quincy, Illinois on one occasion to obtain cocaine. CS #2 stated that he drove Jett's girlfriend's vehicle, being a 1996 burgundy Chevy Monte Carlo bearing Illinois temporary plate 136F245 (Insp. Mangold is familiar with this vehicle and knows the vehicle to be owned by Jett's girlfriend, Abbey). CS #2 indicated that both Jett and Jackson

purchased crack cocaine in Chicago, Illinois, and then the three returned to Quincy, Illinois where CS #2 assisted in the distribution of the crack cocaine.

### INTERVIEW ON APRIL 12, 2006

19. On 04/12/06 Insp. Mangold interviewed Jackson concerning his and Jett's drug trafficking activities in Quincy, Illinois. Jackson was interviewed after he was lodged in the Adams County jail for an outstanding warrant out of Cook County and for Obstructing Justice. The Obstructing Justice charge stemmed from Jackson lying about his name during a vehicle stop. Prior to the interview beginning Insp. Mangold read Jackson his Miranda rights and Jackson indicated that he understood his rights and stated that he would speak with law enforcement officers.

20. Jackson stated that he is from Chicago, Illinois and arrived in Quincy, Illinois in mid-July of 2005. Jackson stated that since his arrival in Quincy, Illinois, that he has been selling crack cocaine for Jett and indicated that he knew Jett from Chicago, Illinois. Jackson stated he would stay at different locations with Dwayne Jett in Quincy.

21. Jackson admitted selling to an individual which he knew to be "Sincere" on at least two occasions. Jackson stated that both of these occasions were $20 pieces of crack cocaine. Jackson recalled one time when "Sincere" arrived at an apartment where Jackson was staying to purchase crack cocaine. Jackson said he attempted to sell "Sincere" the crack cocaine but that "Sincere" refused to purchase the cocaine from Jackson and waited until Jett arrived. (Affiant's note: "Sincere" is CS #1).

22. Jackson indicated that there was an occasion when he went to Chicago, Illinois with Jett and Haywood (CS#2) to purchase crack cocaine and that he (Jackson) had given Jett $1,250 to assist in the purchase four and a half ounces of crack cocaine. Jackson said the three of them took Jett's girlfriend's (Abbey's) vehicle to Chicago, Illinois. Jackson advised Insp. Mangold that he could prove this trip occurred due to the fact he, Jackson, still had 14-16 grams of crack cocaine left and a guy by the initials of "S. B." was holding the crack cocaine for Jackson until he was released from jail. Jackson advised that Jett will bond out Jackson and that he (Jett) would not let Jackson sit in the county jail. (It might be noted Jackson did bond out the next day and spoke to the R/O by cell phone). Jackson later indicated that he and Jett obtained the crack cocaine from a male by the name of "J" at 51st and May Street, Chicago, Illinois.

### RELEVANT EVENTS ON APRIL 28, 2006

23. On 04/28/06 a state-authorized search warrant was executed at 828 ½ N. 11th St., Quincy, Illinois. This address has been identified as the residence of Dwayne D. Jett and his minor girlfriend Shantiya Abbey. At the time the Quincy Police Dept. Tactical Team breached the door, Jett was located in the bathroom attempting to flush crack cocaine down the toilet. Also present at the apartment were Dwayne Jett's girlfriend (Abbey) and his one-year old daughter. Seized subsequent to the execution of the search warrant were several clear corner-cut baggies each containing a hard white substance. These baggies of purported crack cocaine were located in the bathroom where Dwayne Jett was found, underneath the mattress of the bedroom and on the hallway floor.

24. The crack cocaine seized subsequent to the search warrant at 828 ½ N. 11th Street, Quincy, Illinois was subsequently submitted to the Illinois state Police Forensics Laboratory for analysis. The total weight of all crack cocaine exhibits seized during this search warrant was found to consist of at least 8.7 grams of cocaine "crack" base.

25. Jett and Abbey were transported to the Quincy Police Department for processing where Abbey requested to speak to an attorney. Jett was interviewed by Inspector Mangold after Jett was advised of his Miranda rights. Jett indicated that he understood his rights and agreed to speak with law enforcement officers. Jett admitted he was aware of the crack cocaine in the apartment where he was just arrested and that he, Jett, had placed the crack cocaine under the mattress in the bedroom where Jett and his girlfriend (Abbey), along with his one-year old daughter, were sleeping. Jett indicated that the cocaine was left there by Jermarel Jackson. Jett advised Jackson told Jett to hold the cocaine until he returned from Chicago, Illinois. Jett said Jackson had just brought the crack cocaine from Chicago, Illinois, to Quincy, Illinois, and then left to return to Chicago, Illinois, with his girlfriend due to the fact Jackson had court. Jett said he was not sure how much crack cocaine was there and believed he may have flushed some of the cocaine down the toilet when officers entered the apartment.

26. Insp. Mangold then questioned Jett in reference to the deliveries of crack cocaine Jett had made to CS #1. Jett advised that he is familiar with CS #1 and stated that CS #1 goes by the street name of "Sincere". Jett admitted to the two deliveries of crack cocaine along with the sale of the 25 caliber Beretta model 21A semi-automatic pistol summarized above. Jett also admitted to the first delivery of crack cocaine to CS #1 in which Jett had his girlfriend (Abbey)

deliver the crack cocaine to CS #1 while Jett stayed in the apartment house due to the fact Jett was wanted in reference to a shooting in Quincy, Illinois. It is noted that the three deliveries of crack cocaine Dwayne Jett confessed to occurred on 09/30/05 (lab results 2.6 grams of cocaine "crack" base); 11/16/05 (lab results .9 grams of cocaine "crack" base); and on 12/05/05 (lab results 3 grams of cocaine "crack" base). It is also noted that the sale of the Beretta pistol also occurred on 11/16/05.

27.  Jett stated that he, along with Jackson and David "D" Haywood from Chicago, Illinois, had traveled from Quincy, Illinois, to Chicago, Illinois, in April of 2006 at which time, according to Jett, Jackson purchased four and a half ounces of crack cocaine from an individual named "J". Jett said the three then returned to Quincy, Illinois, where Jackson and Haywood sold the crack cocaine. Jett said he received $1,200 to $1,400 from Jackson for allowing Jackson to sell the crack cocaine in Quincy, IL. Jett said he did not participate in any of the sale of the crack cocaine.

### INTERVIEW ON MAY 7, 2006

28.  On 05/07/06 Abbey (Jett's girlfriend) arrived at the Quincy, Illinois, Police Department and was interviewed by Quincy Police Officer Brian Martin. Prior to the interview beginning Officer Martin read Abbey her Miranda rights and Abbey indicated that she understood her rights and stated that she would speak with law enforcement officers. Abbey stated that she, and Jett, had traveled to Chicago, Illinois, in late April, 2006, for Jett to meet an individual at 53rd St. and Rice to purchase crack cocaine. Abbey stated that she and Jett

returned to Quincy with the crack cocaine and that the crack cocaine found in her apartment during the execution of the search warrant on 04/28/06 was the cocaine Jett brought back from Chicago, Illinois. Abbey indicated that she had no knowledge about how much crack cocaine Jett actually purchased while in Chicago.

## INTERVIEW ON MAY 22, 2006

29.    On 05/22/06 Insp. Mangold again interviewed Jackson. This interview occurred after Jackson had bonded out on the original charge of Obstructing Justice and an additional warrant was issued for Jackson. Jackson was arrested on this warrant and returned to the Adams County Jail, Quincy, Illinois. Prior to the interview beginning Insp. Mangold read Jackson his Miranda rights and Jackson indicated that he understood his rights and stated that he would speak with law enforcement officers.

During the interview, Jackson again admitted that he contributed $1,200 to Jett for four and a half ounces of crack cocaine from Chicago, Illinois. Jackson again advised that this was when he, Jett and Haywood had made the trip to Chicago, Illinois to purchase crack cocaine and return to Quincy, Illinois. Jackson advised that he went with Jett to obtain the crack cocaine in Chicago, Illinois, on only one occasion. Jackson then stated that he does not sell crack cocaine and that all he does is give the cocaine to Jett's people and they sell it for him.

s/ Christian A. McGuire

Christian A. McGuire
Special Agent, DEA

Subscribed and sworn to before me
July19 , 2006.

s/ Byron G. Cudmore

---

**BYRON G. CUDMORE**
**UNITED STATES MAGISTRATE JUDGE**