E-FILED
Tuesday, 08 January, 2008  11:19:37 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 06-03037 |
| ) | |
| JERMAREL JACKSON, ) | |
| ) | |
| Defendant. ) | |

**COMMENTARY ON SENTENCING**

**NOW COMES** JERMAREL JACKSON, by and through his attorney, Jon Gray Noll, and for his Commentary on Sentencing, states to this Honorable Court that:

**BACKGROUND**

On July 19, 2006, the Defendant was arrested for conspiracy to distribute cocaine base ("crack"). He was subsequently indicted for this charge in a single-count indictment on August 3, 2006, along with co-defendant, Dwayne Jett. Subsequently, on September 1, 2006, the Government filed an information, pursuant to Title 21 United States Code Section 851, placing the Defendant on notice that the Government intended to rely upon his two prior felony drug convictions during their prosecution of the instant offense. In the event of a conviction in the present case, this notice would trigger an automatic mandatory sentence of life in prison.

The Defendant, through his attorney, entered into a cooperation agreement with the government and provided substantial assistance pursuant to that agreement.

On March 28, 2007, the Defendant entered an open plea of guilty to the indictment. Sentencing is presently scheduled for January 25, 2008.

## OFFENSE CONDUCT

The United States probation office for the Central District of Illinois, through its agent, Laura Hanner, completed the Revised Presentence Investigation of the Defendant on November 1, 2007.

The offense conduct is laid out by Probation Officer Hanner in paragraphs 6-34, inclusively. Without trying to minimize the Defendant's criminal culpability, it is sufficient to say that Mr. Jackson was a street-level dealer of cocaine and crack cocaine for a substantial period of his youth, up to the time of his arrest. Most of the sales in question were small gram amounts of crack cocaine.

Ms. Hanner's report sets out in specific detail those amounts of crack cocaine and powder cocaine for which the Defendant is being held accountable at paragraph 34. This reference is not contested by the Defendant. However, it does show the relatively small amounts the Defendant was dealing in. That is in no way a justification, but should be a factor in consideration by the Court in the sentencing proceedings.

Probation Officer Hanner did not assess the Defendant with any type of enhancement for being a leader/organizer, possession of a gun in furtherance of a drug offense, or obstruction of justice.

After all of the adjustments are made, his total offense level was 27 (see paragraph 49).

## CRIMINAL HISTORY

The Defendant has a significant criminal history, commencing at age 14 to present. His total criminal history points reach 16 for a criminal history category of VI. That is a substantial criminal history for a person who is only 24 years old.

However, of particular note for the Court to consider during the sentencing are the Defendant's two prior drug felony convictions. Both cases stemmed from Cook County convictions. The first was when the Defendant was 18, and was convicted for possessing less than 15 grams of a substance containing cocaine. He was placed on probation for this plea, which probation was subsequently revoked, and the Defendant received three years incarceration in the Illinois Department of Corrections. (See paragraph 51).

The second drug conviction deals with unlawful possession of a controlled substance one year later at age 19. The Defendant pled guilty to possession with intent to deliver less than 1 gram of a substance containing cocaine. He was sentenced to three years with the Illinois Department of Corrections to run concurrent with the first drug conviction (see paragraph 52).

These two prior drug felonies to which the Defendant pled guilty were for very small amounts of cocaine. None the less, when coupled with his present offense, they elevate his mandatory sentence under federal statute to life in prison. That is the statute and must be followed, regardless of how minor the qualifying convictions were.

Regardless, the Defendant has experienced sufficient contact with the authorities through arrests and convictions to warrant the maximum criminal history category of VI. (See paragraph 59)

## ANTICIPATED GOVERNMENT POSITION ON SENTENCING

The Defendant cooperated with the authorities and provided substantial assistance to the Government pursuant to a cooperation letter. The Government, through Assistant United State's Attorney Gregory Gilmore, has recognized this and will make a motion for a downward departure on behalf of the Defendant at the time of Sentencing.

Certainly, the most important aspect of the Motion for Downward Departure is the Government's action to set aside the mandatory life sentence pursuant to Title 21 United States Code Section 841(b)(1)(A).

By any stretch of the imagination, to have the mandatory sentence set aside is a substantial consideration. Assistant U.S. Attorney Gilmore has been tremendous to work with throughout this case and has been an excellent representative of the U.S. Attorney's office. Defense counsel has nothing but appreciation to express for Mr. Gilmore's professionalism and legitimate concern for the Defendant as an individual.

Under its office policies, the Government will seek a downward departure of the Defendant. This downward departure considers that the Defendant, without the mandatory life in prison would start at a sentencing range of 360 months to life for imprisonment. The Government then would seek to provide a percentage downward departure, reducing the potential sentence of the Defendant from 360 months incarceration by up to 30%. This would put the Defendant in the range of a recommended sentence of around 21 to 22 years.

By any measure, this departure is a tremendous benefit to the Defendant—a downward departure of 30% is significant. Based on the Court's own experience, it realizes that such a recommendation by the Government is extraordinary.

For this action, the Defendant is grateful. It means that the Defendant would not spend the rest of his life in prison, and would have the possibility for release by the time he is approximately 40 years old.

## SENTENCING GUIDELINES

Probation Officer Hanner calculated the sentencing guidelines of the Defendant as is required by statute and Court order. Her calculations and reasons for her conclusions are set forth in significant detail throughout the revised presentence investigation dated November 1, 2007.

Based on her review of the evidence, relevant conduct, enhancements, criminal history and other salient factors, she finds that the Defendant falls in a guideline range with an offense level of 27 and a criminal history category of VI, for an imprisonment range of 130 to 162 months. A midrange sentence would be approximately 12 years incarceration. (See paragraph 92)

Guideline calculations dictate a sentence substantially different from the office policy of the U.S. Attorney. The guidelines would give a sentence of approximately 12 years while the U.S. Attorney's office would recommend somewhere in the range of 21 to 22 years incarceration. It is this disparity that arose just prior to the previous sentencing hearing, which prompted the defense to move for a continuance.

It seems to defense counsel that the Government cannot pick and choose as to whether the guidelines apply in some cases and not in others. The application of the guidelines should not depend on whether or not the statutory mandatory minimum has been withdrawn pursuant to cooperation. The sentencing guidelines address this issue specifically at section 5G 1.1(c)(2). This guideline provision states that a sentence may be imposed at any point within the applicable guideline range provided the sentence is not less than any statutorily required minimum sentence.

Thus, it appears that sound sentencing practices by this Court would be to follow the sentencing guideline provisions.

## RECENT SUPREME COURT CASE LAW DEVELOPMENT

Two recent decisions from the U.S. Supreme Court have given federal trial court judges greater leeway in sentencing.

In the first case, *Gall v U.S.*, No. 06-799, decided December 10 2007, the Court reaffirmed it 2005 decision in *U.S. v Booker*, 543 U.S. 220, that the federal sentencing guidelines are advisory only, and held that appellate courts could not require a showing of "extraordinary circumstances" in order to allow sentences below the guidelines to stand.

"If the guidelines were still mandatory, and assuming the facts did not justify a guidelines-based downward departure, this would provide a sufficient basis for setting aside [the defendant's] sentence," Justice John Paul Stevens wrote for the majority. "But the guidelines are not mandatory … [They] are only one of the factors to consider."

The defendant in the case, Brian Gall, was part of a ring of "ecstasy" drug dealers for several months in college before withdrawing from the enterprise. Three years later, he pleaded guilty to drug conspiracy charges in relation to his past involvement in the ecstasy dealing, an offense which called for up to three years in prison under the federal guidelines.

Citing a number of factors—including Gall's withdrawal from the conspiracy, his young age at the time of the offense and the fact that he subsequently went on to finish college and become gainfully employed—the judge sentenced him to three year's probation, calling the sentence "sufficient, but not greater than necessary."

The 8th Circuit reversed, finding the below-guideline sentence unreasonable because it was not "supported by extraordinary circumstances."

In a 7-2 decision, the Supreme Court decision, the Supreme Court held that such an "extraordinary circumstance" test would make the guidelines functionally mandatory.

Stevens then set out a "how to" guide that trial judges can use in determining a sentence, as well as rules on how courts of appeals should conduct their review.

First, the trial court should calculate the applicable sentence under the guidelines, and use it as a "starting point," but—consistent with the Court's ruling in Booker that the guidelines are advisory and not mandatory—this is not the only consideration.

The trial judge may not presume that the guidelines are reasonable, but must assess each case individually, and must justify any deviation from the guidelines in relation to the reasons for the deviation. The decision must also be explained thoroughly enough for an appellate court to review it.

The appellate courts, Stevens wrote, must then (1) ensure no procedural errors were made by the trial court, and assuming they were not, (2) review the sentencing under an abuse-of-discretion standard.

If this district court's decision was reasonable, the appellate court cannot reverse just because it would have found differently.

"Given the dramatic contrast between [the defendant's] behavior before he joined the conspiracy and his conduct after withdrawing, it was not unreasonable for the District Judge to

view [his] immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engages in such impetuous and ill-considered conduct in the future," the opinion stated.

In this case, Stevens wrote, "it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated … The District Court regarded [the defendant's] voluntary withdrawal as a reasonable basis for giving him a less severe sentence than the tree codefendants … who neither withdrew from the conspiracy nor rehabilitated themselves as [the defendant] had done."

In the second guidelines case, *Kimbrough v. U.S.*, No. 06-6330, decided December 10, 2007, the Court held that judges have the discretion to impose shorter sentences for crack cocaine offenses than required under the federal sentencing guidelines, which called for a sentence 100 times greater than for the same amount of powder cocaine.

"[D]istrict courts must treat the guidelines as the 'starting point and the initial benchmark,'" Justice Ruth Bader Ginsburg wrote in the majority opinion. Again, the vote was 7-2, with Thomas and Alito in dissent.

The defendant, Derrick Kimbrough, had pleaded guilty to drug charges involving powder and crack cocaine. The guidelines previously called for a 100-to-1 powder-to-crack ratio in sentencing, meaning that the sentence for 5 grams of crack should mirror the sentence for 500 grams of powder cocaine.

Considering Kimbrough's steady work history, military service and minor crime history, a U.S. District Court judge sentenced him to 20 years in prison, instead of the 17 years called for under the federal guidelines. But the 4th Circuit reversed, finding the variance unreasonable.

The Supreme Court disagreed, holding that the government's interest in preventing sentencing disparities could be achieved without making the federal guidelines presumptively mandatory.

"It is unquestioned that uniformity remains an important goal of sentencing. As we explained in *Booker*, however, advisory guidelines in response to sentencing practices will help to avoid excessive sentencing disparities,: the opinion stated.

And while "the Commission fills an important institutional role," Ginsburg wrote, "the sentencing judge [has] greater familiarity [with] the individual case and the individual defendant before him than the Commission or the appeals court."

The decision was announced one day before the Commission voted to make some crack cocaine sentences retroactively shorter, a move that gives nearly 20,000 federal inmates a chance to petition for an earlier release date.

The Commission also recently changed the guidelines to reduce the disparity in prison time between crimes involving crack and those involving powder cocaine.

New guidelines took effect November 1, 2008 after Congress took no action to overturn the change.

Ginsburg noted the Commission's recent actions.

"Congress failed to act on a proposed amendment to the guidelines in a high-profile area in which it had previously exercised its disapproval authority," she wrote. "If nothing else, this tacit acceptance of the [Commission's] amendment undermines the Government's position" that the 100-to-1 ratio must stand.

## **DEFENDANT'S POSITION ON SENTENCING**

Defense counsel has seen the rise and fall of the sentencing guidelines over the last 20 years. Sometimes, the sentencing guidelines were fair and equitable in their disposition of a case. Other times they were harsh and draconian. Yet, the U.S. District trial courts followed the law as they were sworn to do.

Today is a different story. The defense is unsure whether this disparity between the sentencing guidelines and the proposed downward departure of the government is a dilemma or an opportunity. There is no question that the government has acted in good faith to follow office policies and to avoid disparity in other sentences which have been given over the last 20 years.

On the other hand, the guidelines, which have been the straight jacket for the courts during that same 20 years, dictate a sentence nearly 10 years below those of the U.S. Attorney office policy.

Taking these factors into account along with the recent decisions by the U.S. Supreme Court leads to a very simple conclusion. A United States District Court sentencing a defendant in a criminal case must look at the guidelines, statutory considerations and its own sound discretion to render a sentence other than on mandated by statute.

Title 18 United States Code, Section 3553(a) sets forth the factors to be considered by the Court in imposing sentencing. In this brave new world, the importance of these factors has been dramatically enhanced since the *Booker* decision and its progeny.

There are a number of considerations for the Court based on the facts that are set forth in the presentence investigation. Without reiterating every point at this time, the defense can rely upon the Court's own good judgment in reviewing such things as personal background, criminal history, cooperation with the authorities, family situation and the like. For thirty years on the bench, this court has demonstrated a capacity to do "what is right". The defense would submit that this is a seminal decision by the Court on how to handle criminal sentences today and in the future.

Do the guidelines matter?

Do the guidelines matter to an extent that they overrule the U.S. Attorney's office policy?

Does the Court see the Government's office policy as a factor to be considered rather than something to which is mandated to follow?

Does the Court take a pluralistic view of the factors to be weighed and considered using its sound discretion?

All of these questions and several more make the sentencing of Jermarel Jackson in this case one of the most pivotal cases for this Court. The defense position as to sentencing is simple and straightforward:

The Court should sentence the Defendant to a fair sentence given all factors to be considered by statute, case law and the interest of justice.

**WHEREFORE,** the defendant, Jermarel Jackson, prays this Honorable Court to:

1. Consider the case law and argument set forth in this commentary.

2. Sentence the Defendant to a just sentence reflecting all necessary considerations as set forth above.

3. To make a recommendation to the Bureau of Prisons that the Defendant be placed in intensive drug treatment during his time of incarceration.

4. To make a recommendation to the Bureau of Prisons to place the Defendant in a facility as close to Chicago, Illinois as possible.

5. To do take such further and other actions as are necessary in the interest of Justice.

Respectfully submitted,

**JERMAREL JACKSON**, Defendant

BY: ___/s Jon Gray Noll___
Jon Gray Noll 02060108
Attorney for Defendant
Noll Law Office
802 South Second Street
Springfield, IL 62704
Telephone: (217) 544-8441
Fax: (217) 544-8775
E-mail: noll@noll-law.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Gregory Gilmore
U. S. Attorney's Office
318 South 6th Street
Springfield, IL 62701

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Jermarel Jackson
Menard County Jail
P.O. Box 476
Petersburg, IL 62675-0476

/s Jon Gray Noll
Jon Gray Noll 02060108
Attorney for Defendant
Noll Law Office
802 South Second Street
Springfield, IL 62704
Telephone: (217) 544-8441
Fax: (217) 544-8775
E-mail: noll@noll-law.com

13